## Feldman Nomination Paper for Mayor, etc.

*Isadore A. Shrager, Joseph G. Feldman,* for petitioners.

*Harry Wolov,* for respondent.

SPAETH, J., July 7, 1971.—

### NATURE OF THE CASE

Two matters are before the court, each involving the nomination paper of two candidates of the Save Our City Party—Joseph G. Feldman, for the office of Mayor of the City of Philadelphia, and Ralph P. (Ray) Turchi, Jr., for the office of Councilman-at-Large of the city. The first matter is a petition, asking that the nomination paper be set aside, and the second is a complaint in mandamus, asking that the city commissioners be ordered to accept the nomination paper as properly filed.

### HISTORY OF THE CASE

On March 31, 1971, Messrs. Feldman and Turchi presented the nomination paper at the office of the city commissioners, tendering the appropriate filing fees. After examining the paper, an employe of the commissioners accepted the paper and issued two receipts for the fees, one receipt to Mr. Feldman and one

to Mr. Turchi, each receipt stating that the paper contained 7,724 signatures.

On April 7th, Eugene E. Maier, a qualified elector of the City of Philadelphia, represented by counsel for the Democratic City Committee, filed a petition to set aside the nomination paper, alleging, generally, that the nomination paper did not contain a sufficient number of valid signatures. On April 9th, the city commissioners advised Messrs. Feldman and Turchi that upon review it had been determined that the nomination paper did not contain a sufficient number of valid signatures and that, accordingly, the commissioners had decided to reject the paper. On April 15th, Messrs. Feldman and Turchi filed a complaint in mandamus, asking that the commissioners be ordered to accept the paper.

On June 4th, upon assignment by the President Judge, this court conducted a pretrial conference. Upon motion of counsel for Mr. Maier, and without objection by counsel for Messrs. Feldman and Turchi, an amendment to the petition to set aside was allowed; upon motion, both of counsel for Mr. Maier and counsel for Messrs. Feldman and Turchi, an order was entered requiring the city commissioners to permit counsel for Mr. Maier and counsel for Messrs. Feldman and Turchi to examine "all records pertaining to voters' registrations" so far as those records pertained to the nomination paper; and upon the court's motion, but without objection by any counsel, the petition to set aside and the complaint in mandamus were consolidated and set down for hearing on June 28th.

On June 15th, counsel for Messrs. Feldman and Turchi, by letter to the court, stated that the amendment to the petition to set aside "would appear . . . to have been allowed [at the pre-trial conference on June 4] in error," counsel contending that the

amendment should have been filed no later than seven days after the nomination paper was filed.

On June 28th, the petition to set aside and the complaint in mandamus were called for hearing. The hearing occupied June 28th, 29th and 30th.

## DISCUSSION

### 1. *Pertinent Statutory Provisions*

The Pennsylvania Election Code of June 3, 1937, P. L. 1333, as amended, 25 PS §2600, et seq., provides in article VIII, sec. 801, 25 PS §2831, for two types of political organizations: a "political party" and a "political body." A "political party" is a political organization "one of whose candidates at either the general or municipal election preceding the primary polled at least five per centum of the largest entire vote cast for any elected candidate [in the county in question] . . ." A "political body" is any political organization that is not a political party "but which has nominated candidates for [the] general or municipal election by nomination papers in the manner provided by this act. . ." Under these provisions, the Save Our City Party, which nominated Messrs. Feldman and Turchi, is a political body.

The manner in which a political body is to nominate candidates is provided by article IX, secs. 951-954, 25 PS §§2911-2914, of the Pennsylvania Election Code. The provisions pertinent to the present case are as follows:

With respect to nominations for the office of mayor and councilman-at-large of the City of Philadelphia, section 951(b), 25 PS §2911(b), provides that "the number of qualified electors . . . signing [the] nomination papers shall be at least equal to two per centum of the largest entire vote cast for any officer, except a judge of a court of record, elected at the last pre-

ceding election . . ." In the present case, this means that the nomination paper filed on behalf of Messrs. Feldman and Turchi (one paper, nominating both men, was filed, rather than a paper for each man) had to be signed by at least 6,954 persons qualified to vote in Philadelphia.

With respect to each of these signatures, section 951(c), 25 PS §2911(c), provides that "[e]ach person signing a nomination paper shall declare therein that he is a qualified elector . . . and shall add to his signature his occupation and residence, . . . with street and number, if any, and shall also add the date of signing . . ."

Finally, section 951(d), 25 PS §2911(d), provides:

"Nomination papers may be on one or more sheets and different sheets must be used for signers resident in different counties. If more than one sheet is used, they shall be bound together when offered for filing if they are intended to constitute one nomination paper, and each sheet shall be numbered consecutively, beginning with number one (1) at the foot of each page. Each sheet shall have appended thereto the affidavit of some person, not necessarily a signer, and not necessarily the same person on each sheet, setting forth—(1) that the affiant is a qualified elector of the State, or of the electoral district, as the case may be, referred to in the nomination paper; (2) his residence, giving city, borough or township with street and number, if any; (3) that the signers signed with full knowledge of the contents of the nomination paper; (4) that their respective residences are correctly stated therein; (5) that they all reside in the county named in the affidavit; (6) that each signed on the date set opposite his name; and (7) that, to the best of affiant's knowledge and belief, the signers are qualified electors of the State, or of the electoral district, as the case may be."

## 2. *Statement of Issues*

There is no issue of fact, for, as will appear with respect to the dispositive facts, the evidence is uncontradicted. The evidence does, however, present several legal issues. As each of these arose, the court deferred ruling; to have made a ruling might have terminated the hearing at once, and, as the court stated to counsel, it preferred, particularly in a matter of such public importance, to have a complete factual record. As it happened, the evidence developed in such a way as to make unnecessary a resolution of any of the several legal issues. The issues, nevertheless, will be stated, for the statement of the context in which each issue arose will serve as the court's findings of fact and so may become pertinent in the event of any further proceedings.

The first issue involves the number of signatures on the nomination paper.

It will be recalled that Messrs. Feldman and Turchi were given receipts stating that the nomination paper contained 7,724 signatures. At the hearing, the receipts were admitted in evidence, and on behalf of Messrs. Feldman and Turchi several witnesses were called in support of the receipts. Among these witnesses were Mr. Feldman himself and Abe S. Rosen, who testified that immediately before the nomination paper was filed, they counted the signatures on it and determined that there were 7,724.

In response, evidence was presented on behalf of Mr. Maier that, in fact, there were only 7,113 signatures on the nomination paper. This evidence included testimony that when the nomination paper was filed, there was no time to count the signatures on it, and that the person receiving the paper simply accepted Mr. Feldman's statement that it contained 7,724 signatures, after a cursory examination had indicated

that Mr. Feldman's statement was at least not far off, and also included testimony that the next day, when two clerks in the city commissioners' office went over the nomination paper carefully, they found only 7,113 signatures.

The court accepts the testimony of Mr. Feldman and Mr. Rosen and finds that they counted the signatures on the nomination paper and believed that there were 7,724. They might, however, have made a mistake; they were moving with great haste, since they were counting the signatures immediately before the deadline for filing the nomination paper; and they had no time to check the adding machine tape, made by Mr. Rosen, against the number of signatures, called out by Mr. Feldman as he reviewed the numerous sheets included in the nomination paper. In contrast, the two clerks who received the nomination paper the next day did check their adding machine tape. Their tape was received in evidence, and the court finds that it correctly reflects that when they counted the signatures, there were only 7,113. Against this fact, however, is the fact that it was not until the next day that the clerks' examination of the nomination paper was made; and although the evidence reveals that during much of this interval the paper was in a safe, it also reveals that the paper was not always in the safe but was taken out for examination at least two times.

Plainly, on this record there is much to be said on both sides of the issue whether the city commissioners, and so Mr. Maier, should be held to the statement on the receipts that the nomination paper contained 7,724 signatures.

It will be recalled that section 951(d) of the Pennsylvania Election Code, 25 PS §2911(d), provides that "[n]omination papers may be on one or more sheets . . . If more than one sheet is used, they shall be

bound together when offered for filing . . ., and each sheet shall be numbered consecutively . . ." In the present case, the nomination paper consisted of many sheets, about three inches thick when arranged in a pile. However, when offered for filing, the sheets were not bound together, nor even numbered. If some of the sheets were lost, it might be concluded that those offering them had only themselves to blame. On the other hand, had the office of the city commissioners not accepted the sheets until they were bound, or at least numbered, or had it not issued a receipt without counting the signatures, the present argument about the number of signatures would not have arisen.

The next set of issues involves the right to amend paragraphs 4 and 12 of the petition to set aside.

Paragraph 4 of the petition to set aside alleges that of the signatures on the nomination paper, "1,114 . . . are illegal, null and void, in that they do not appear on the registration rolls of the City of Philadelphia." Attached to the petition, as schedule "B," is a list of these 1,114 signatures, each signature being identified by reference, first to the sheet and next to the number of the line on that sheet, on which it appears. At the hearing, testimony was presented on behalf of Mr. Maier that further examination of the nomination paper had disclosed that it contained 705 more signatures that did not appear on the registration rolls. This testimony was uncontradicted, and the court accepts it. However, counsel for Messrs. Feldman and Turchi objected to the testimony as beyond the allegations of paragraph 4 of the petition to set aside, and he further objected to an amendment to conform the allegations to the proof, contending that the amendment was barred by section 977 of the Pennsylvania Election Code, 25 PS §2937, which provides that "[a]ll nomination . . . papers received and filed within the periods limited by

this act shall be deemed to be valid, unless, within seven days after the last day for filing said . . . paper, a petition is presented to the court of common pleas . . ., specifically setting forth the objections thereto . . . ."

Paragraph 12 of the petition to set aside alleges

"That 3917 signatures [on the nomination paper] are invalid for the reason that the affiant, Abe S. Rosen, was not, in fact, the Circulator of the 62 Petitions upon which his affidavit appears."

As has been mentioned, at the pretrial conference, upon motion of counsel for Mr. Maier, and without objection by counsel for Messrs. Feldman and Turchi, an amendment to the petition to set aside was allowed. The amendment changed paragraph 12 of the petition to set aside to allege "That 3917 signatures are invalid for the reason that the affiant, Abe S. Rosen, was not, in fact, the Circulator of the 62 Petitions upon which his affidavit appears, nor did he have personal knowledge or direct information of those matters required by Section 909(d) of the Election Code, 25 P. S. 2869."

At the hearing, testimony was presented on behalf of Mr. Maier that, in fact, Mr. Rosen's affidavit appeared on 89, rather than 62 "Petitions," more accurately, sheets included in the nomination paper, and that these sheets contained 4,682, rather than 3,917, signatures. Again, this testimony was uncontradicted, and the court accepts it. However, counsel for Messrs. Feldman and Turchi again objected to the testimony as beyond the allegations of paragraph 12 of the petition to set aside, even as amended, and he further objected to an amendment to conform the allegations to the proof, contending that the amendment was barred by the seven-day-limitation period specified in section 977 of the Pennsylvania Election Code, 25 PS §2937, which has been quoted above.

Before commenting upon the possible pertinence of the seven-day-limitation period, it will be convenient to discuss the final set of issues, which also involve paragraph 12 of the petition to set aside.

It will be recalled that section 951(d) of the Pennsylvania Election Code, 25 PS §2911(d), provides that if, as in the present case, the nomination paper consists of more than one sheet, each sheet "shall have appended thereto the affidavit of some person," who in the present case is Mr. Rosen, "setting forth . . . that the signers signed with full knowledge of the contents of the nomination paper; . . . that their respective residences are correctly stated . . .; that they all reside in the county named [here Philadelphia] . . .; that each signed on the date set opposite his name; and . . . that, to the best of affiant's knowledge and belief, the signers are qualified electors of . . . the electoral district . . ."

At the hearing, testimony was presented on behalf of Mr. Maier for the purpose of showing that Mr. Rosen had not had sufficient knowledge to permit him to execute the affidavits, either on the 62 sheets of the nomination paper referred to in paragraph 12 of the petition to set aside, or on the 89 sheets that would be referred to if an amendment of the paragraph were allowed. From this testimony, which was given by Mr. Rosen, and which the court accepts, the following appeared:

Mr. Rosen was in charge of the effort to obtain sufficient signatures for the nomination of Messrs. Feldman and Turchi. To this purpose he distributed a number of sheets to about a dozen "key" people. He did not know how many sheets he had distributed; it was stipulated, however, that he had distributed at least 140, since that was the number of sheets in the nomination paper as brought to the hearing room. Mr. Rosen instructed the key people on the manner in which sig-

natures on the sheets should be obtained, explaining that only persons qualified to vote in Philadelphia should sign, and that each signer should note his residence, occupation, address and the date he signed. When the sheets were returned to him, he usually asked if these instructions had been followed, and the usual response was to the effect, "We did the best we could." It is apparent from the number of sheets circulated that the key people did not circulate all of the sheets but rather, in turn, distributed at least some of them to others to circulate. Mr. Rosen did not, however, know to what others. Thus, when a sheet was returned to him, if he asked whether his instructions had been followed, he did not know whether the question was directed to the person who had circulated the sheet. With respect to many of the sheets—89, as has been mentioned—the circulator's affidavit required by section 951(d) of the Pennsylvania Election Code, 25 PS §2911(d), was not executed: Thereupon, Mr. Rosen executed the affidavits. Except for three signatures that he had obtained, he did not know whether the names appearing on the sheets had been written there by persons who, in fact, bore those names, nor whether the signers were qualified to vote in Philadelphia and knew what they were signing, nor whether such residence, occupation, address and date of signing as may have been noted opposite any given name were correct. He nevertheless executed the affidavits on the assumption that his instructions to the key people had been followed.

Counsel for Messrs. Feldman and Turchi objected to this testimony as beyond the scope of the allegations of paragraph 12 of the petition to set aside, which, as has been seen, only alleged that Mr. Rosen "was not, in fact, the Circulator" of the sheets on which his affidavits appeared. To this objection counsel for Mr.

Maier made two replies: that "Circulator" was sufficiently broad to permit the testimony; and that if it were not, the amendment to paragraph 12, which had been allowed at the pretrial conference without objection by counsel for Messrs. Feldman and Turchi, permitted the testimony in that the amendment had added the allegation, "nor did [Mr. Rosen] have personal knowledge or direct information of those matters required by Section 909(d) of the Election Code, 25 PS §2869." (This section refers to nomination papers filed by candidates of political parties, not to nomination papers filed by candidates of political bodies.) To this counsel for Messrs. Feldman and Turchi replied that when he had failed to object to the amendment, he had been unaware of the seven-day limitation period provided by section 977 of the Pennsylvania Election Code, 25 PS §2937, and further that, in any event, the alleged defects in Mr. Rosen's knowledge were mere "technicalities" that should not invalidate his affidavits.

In considering respective counsel's several contentions with respect to paragraphs 4 and 12 of the petition to set aside, again, plainly, there is much to be said on both sides. Unless some rather considerable rigidity of procedure is required with respect to the filing and challenging of nomination papers, elections may become so disorderly that they will not express the electorate's will; but that expression will be equally precluded by too much rigidity of procedure. The difficulty of striking the proper balance is suggested by an examination of section 977 of the Pennsylvania Election Code, 25 PS §2937. After imposing the seven-day limitation period for filing a petition to set aside a nomination paper, the section provides that amendments to the petition to set aside may be permitted, "in [the Court's] discretion," if "the objections relate to

material errors or defects apparent on the face of the nomination . . . paper." But what does "material" mean? And if a signer is not a qualified elector, is that a defect "apparent on the face" of the nomination paper? And does this limited grant of power to permit amendment mean that otherwise the court has no power to permit amendment? In addition to these difficulties, it may be observed that respective counsel have been inconsistent to an equal, although opposite, degree: Counsel for Mr. Maier contends that the Pennsylvania Election Code should be liberally construed with respect to the court's power to permit amendment of the petition to set aside, but strictly construed with respect to the validity of Mr. Rosen's affidavits, whereas counsel for Messrs. Feldman and Turchi make just the opposite contention.

### 3. *The Dispositive Facts*

The reason that none of the legal issues just discussed need be decided is that all of them may be resolved, arguendo, in favor of Messrs. Feldman and Turchi and still their nomination paper must be set aside. In other words: Assuming that the city commissioners, and so Mr. Maier, should be held to the receipts and the nomination paper, hence should be found to have contained 7,724 signatures; assuming that no challenge to the validity of any of these signatures may be made except as specifically alleged in the petition to set aside, without any amendment; and assuming that the petition to set aside either did not challenge Mr. Rosen's affidavits with sufficient specificity, or that if it did, the challenge presented mere "technicalities"; still, sufficient specific defects in the signatures were alleged, and have been proved by uncontradicted evidence, to reduce the 7,724 signatures to less than 6,954, which, it will be recalled, is the min-

imum number of signatures required for the nomination paper to be valid. These specific allegations appear in paragraphs 4, 5, 6, and 10 of the petition to set aside.

Paragraph 4 of the petition to set aside alleges "That 1114 signatures are illegal, null and void, in that they do not appear on the registration rolls of the City of Philadelphia. These illegal signatures contained in the Nomination Paper are incorporated by reference and are referred to by sheet number and page in Schedule 'B' attached hereto."

Jack Welsh, Voting Registration Supervisor of the Registration Division, testified without contradiction that schedule "B" referred not to 1,114 but to 1,115 signatures, and that, of these, 771 did not appear on the registration rolls. Deducting 771 from 7,724 leaves 6,953, or one less than the minimum number of required signatures.

Paragraph 5 of the petition to set aside alleges that "65 signatures are illegal in that they are affixed to sheet numbers 118, 119, 122 and 130, and the Circulator did not take the affidavit to those sheets as required by the Election Code."

The sheet numbers referred to were noted on the sheets after the nomination paper was filed and incident to the examination of it. It was stipulated, after an inspection of these sheets during the hearing, that they did contain 65 signatures and did not include a circulator's affidavit. No contention is made that the omission of the affidavit is a mere technicality. Deducting 65 from 6,953 reduces the number of signatures to 6,888.

Paragraph 6 of the petition to set aside alleges "That 98 names attached to the Nomination Paper are not the signatures of qualified Electors, but are, in fact, the printed names of individuals which is not in

accordance with the Election Code, and said purported signatures are therefore illegal, null and void. These names, as they appear in Exhibit 'A,' are incorporated herein by reference, and are more fully referred to by sheet, number and page in Exhibit 'B.'"

Exhibit "A" is a copy of the nomination paper. Mr. Welsh testified without contradiction that an examination of the nomination paper and of his records disclosed not 98 but 34 printed names, and with respect to each of these 34 he produced a registration affidavit showing that when the person bearing the name in question registered to vote, he did not print but wrote his name. No contention is made that, in these circumstances, the printing is a mere technicality. Deducting 34 from 6,888 reduces the number of signatures to 6,854.

Finally, paragraph 10 of the petition to set aside alleges that "58 signatures are illegal, null and void in that the person signing said paper failed to set forth therein their addresses so as to show that they were residents of the City of Philadelphia. Said signatures are contained in Exhibit 'A' attached hereto and incorporated by reference herewith."

An examination of the nomination paper during the hearing disclosed not 58 but 54 signatures without any address. No contention is made that such an omission is a mere technicality. Deducting 54 from 6,854 reduces the number of signatures to 6,800.

Thus, it appears on uncontradicted evidence, that the nomination paper filed on behalf of Messrs. Feldman and Turchi must be set aside in that it did not contain a sufficient number of valid signatures.

## ORDER

And now, July 7, 1971, the petition to set aside the nomination paper is granted; the complaint in mandamus is dismissed.